**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 17-CV-22957-SCOLA/TORRES

GEORGE HARRISON,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

     Defendant.

_____/

**UNITED STATES OF AMERICA'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant, United States of America ("United States"), pursuant to Federal Rule of Civil Procedure 56, moves for case-dispositive summary judgment in its favor.  In this medical malpractice case, Plaintiff alleges that Dr. Joseph Mensch ("Dr. Mensch") injured one of Plaintiff's nerves during shoulder surgery at the Miami VA in 2013.  Plaintiff's case fails and the United States warrants summary judgment in its favor.

**First**, the record evidence establishes that the court lacks subject matter jurisdiction over this case. Sovereign immunity bars suit against the United States except to the extent that it consents to be sued. Congress has authorized a limited waiver of sovereign immunity under the Federal Tort Claims Act ("FTCA") for suits based on the "negligent or wrongful act or omission of **any employee of the Government** while acting within the scope of his office or employment." See 28 U.S.C. §1346(b) (emphasis added).  The undisputed facts show that Dr. Mensch was a University of Miami employee and **not an employee** of the federal Government when he treated

Plaintiff in 2013.  Therefore, there is no jurisdictional basis for this FTCA lawsuit against the United States.

**Second**, the Court should grant summary judgment in favor of the United States on the merits of the case because Plaintiff cannot establish the elements of medical malpractice.  To meet his burden of proving medical malpractice, Plaintiff must produce evidence from a medical expert that establishes: the applicable standard of medical care; that there was a breach of that standard of care; and that the breach caused the injury that Plaintiff complains of.  Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla. 1984) (elements of medical malpractice claim); Lambert v. United States, 198 Fed. App'x 835, 838 (11th Cir. 2006) (expert testimony required to prove medical malpractice claim). Plaintiff has failed to produce any expert testimony, report, or disclosure on any of these elements. The only expert medical evidence in this case establishes no medical malpractice and calls for a judgment in favor of the United States.

## I.      STANDARD OF REVIEW

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "Where the record taken as a whole would not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and the court may grant the motion for summary judgment.  Scott v. Harris, 550 U.S. 372, 380 (2007).

## II.      THE COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE FTCA BECAUSE DR. MENSCH WAS AN INDEPENDENT CONTRACTOR

The United States is a sovereign and has immunity from suit unless it expressly waives its immunity and consents to be sued.  See United States v. Testan, 424 U.S. 392, 399 (1976) (explaining that the United States is immune from suit unless it consents to be sued and the terms

of its consent define subject matter jurisdiction).  The FTCA waives the United States' sovereign immunity only for the negligent acts of employees of the government acting within the scope of their federal employment.  See 28 U.S.C. §§1346(b)(1); 2671-2680.  The FTCA defines "employee of the government" as "officers or employees of any federal agency, members of the military or naval forces of the United States. . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States." See 28 U.S.C. §2671.  And, in its definition of "Federal agency," the FTCA excludes any contractor with the United States from its immunity waiver.  Id.

Thus, the FTCA specifically keeps the United States' sovereign immunity for injuries resulting from the actions of parties that contract with the federal government or employees of those contracting parties.  Id.; see U.S. v. Orleans, 425 U.S. 807, 814 (1976); Tisdale v. United States, 62 F.3d 1367, 1371 (11th Cir. 1995) (citing 28 U.S.C. §2671). Indeed, the United States cannot be liable for (or even sued) for the negligent acts of contractors.  See Means v. United States, 176 F.3d 1376, 1378 (11th Cir. 1999) (the alleged tortfeasor's status as an employee of the government is the sine qua non of liability under the FTCA).

Here, the FTCA's independent contractor exception applies and divests this Court of subject matter jurisdiction because Dr. Mensch was an employee of an independent contractor, namely the University of Miami, during the time that he treated Plaintiff.  Whether one is an employee of the United States is a question of federal law.  Logue v. United States, 412 U.S. 521 (1973).  Courts determine this by applying the "control test" to ascertain whether the United States had the authority "to control the detailed physical performance of the contractor" and whether the United States actually supervised the day-to-day operations of the contractor.  Orleans, 425 U.S. at 814; Logue, 412 U.S. at 528-29.  "In applying the control test, the contract and its terms fixing

3

the relationship of the parties is critical." Rice ex rel. Castro v. United States, 2004 WL 3410262, at *1 (N.D. Fla. Oct. 1, 2004) (citations omitted).  Further, "[t]he government's ability to compel compliance with standards, rules, and regulations [is] not important" in this analysis.  Del Valle v. Sanchez, 170 F.Supp.2d 1254, 1265 (S.D. Fla. 2001) (citing Orleans, 425 U.S. 807).

Here, the terms of the contract illustrate that Dr. Mensch was an employee of independent contractor UM and not a VA employee when he treated the Plaintiff.  The contract lists Dr. Mensch as one of two physicians that will provide orthopedic surgery services at the VA.  See Statement of Undisputed Material Facts (ECF No. 44), ¶ 1.  The duties of the contract doctors include providing medical care, supervising and training residents assigned to the VA by UM, and administrative duties such as record-keeping.  See ECF No. 42-1, Ex. 1 thereto at pp. 7-9.  The contract provides that "the contractor shall be responsible for coordinating, evaluating, treatment and overall medical management of eligible-veterans enrolled in the clinic and inpatient setting." Id. at pp. 7-8.

Further, the contract contains key terms that expressly define the relationship between the parties as independent contractor/contractee and **not** employer/employer.  These terms are:

- "The parties agree that the contractor, its employees, agents and subcontractors shall not be considered VA employees for any purpose."  See ECF No. 44 at ¶ 5.

- "The professional services rendered by the Contractor or its health-care providers are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis or specific medical treatments."  See ECF No. 44 at ¶ 6.

- "The contractor and its health-care providers shall be liable for their liability-producing acts or omissions."  See ECF No. 44 at ¶ 6.

Additionally, under the contract it is UM's responsibility to ensure that the contract doctors, including Dr. Mensch, were trained, competent to perform medical tasks, and up-to-date on

continuing training education requirements.  See ECF No. 44 at ¶ 4.  The contract also requires UM to provide insurance, including professional liability, general liability, and workers compensation insurance, for the contract doctors, including Dr. Mensch.  See ECF No. 44 at ¶ 9. It is also UM's duty under the contract to withhold taxes and social security payments from Dr. Mensch's paycheck.  See ECF No. 44 at ¶ 11. The contract also states that UM shall invoice the VA for surgical services performed under the contract.  See ECF No. 44 at ¶ 12.

Courts have found that terms similar to those in the VA/UM contract demonstrate that a doctor is an independent contractor, not a federal employee, for purposes of the FTCA.  For example, in Dutton v. United States, 621 Fed. App'x 962 (11th Cir. 2015), the Eleventh Circuit affirmed summary judgment in favor of the United States where the contract between the VA and a radiology group provided that the group was an independent contractor, the group was to provide its own workers compensation, insurance, health examinations, income tax withholding, and social security payments, and the contract stated that the Government retained no control over the professional aspects of the services rendered.  Id. at 965; see also MacDonald v. United States, 807 F.Supp. 775, 780 (M.D. Ga. 1992) (recognizing that the terms of the contract showed that the doctor was an independent contractor where the contract expressly provided that the Government did not have control over the doctor's medical judgment).

Similarly, in Rice v. United States of America, 2004 WL 3410262 (N.D. Fla. Oct. 1, 2004), the Court held that a vascular surgeon, Dr. Ozaki, was an independent contractor pursuant to a contract between the VA and the University of Florida ("UF") for surgical services.  Id. at *2. Like the VA/UM contract, the purpose of the contract in Rice was for UF to supply surgeons to the VA to provide medical care to patients and for other clinical, teaching, and administrative

tasks. Id. at *1. Additionally, like the VA/UM contract, the contract in Rice included the following terms that the Court found significant in concluding that the doctor was an independent contractor:

- The contract stated that the physicians provided by UF to the VA "shall not be considered VA employees for any purpose." Id. at *1.

- UF had full responsibility under the contract for the protection of its personnel to provide worker's compensation insurance, professional liability insurance, and income tax withholding and social security payments. Id.

- UF billed the VA for services provided under the contract by the physician. Id. at *2.

Further, Dr. Ozaki, like Dr. Mensch, received all of his salary from the university.[1] Id. In reaching its conclusion that Dr. Ozaki was an independent contractor, the Court observed that its holding "comports with the Circuits examining this issue, which have consistently held that physicians either in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, and not employees of the government for FTCA purposes." Id. (collecting cases); see also Del Valle, 170 F.Supp. 2d at 1267 (same).

Thus, as in Dutton and Rice, the language of the UM/VA contract supports that Dr. Mensch is an independent contractor.[2] In addition to the plain language of the contract, courts look to the performance of the contract in determining the relationship between the parties.

---

[1]     Dr. Ozaki was later hired by the VA as Chief of Vascular Surgery at which time he began receiving his salary from the VA. Rice, 2004 WL 3410262, at *2. Similarly, in the instant case, Dr. Mensch was a VA employee until he became a UM employee in the late 1990s, see ECF No. 39-1 at pp. 36:23-25; 37:1-13.

[2]     The contract in this case is distinguishable from that in Bravo v. United States, 532 F.3d 1154 (11th Cir. 2008). There, the contract stated that "[t]he contractor OB/GYN physician activities shall be subject to day-to-day direction by Navy personnel in a manner comparable to the direction over Navy uniformed and civil personnel engaged in comparable work." Id. at 1160. The contract also stated that contract doctors must "comply[] with directions received from Navy

Here, the performance establishes that the VA did not control Dr. Mensch.  When Dr. Mensch treated patients at the Miami VA, VA personnel did not supervise or control Dr. Mensch's clinical practice.  See ECF No. 44 at ¶ 7.  In fact, the VA contracting officer representative ("COR") "cannot interfere with the contractor's management prerogative by 'supervising' contractor employees or otherwise directing their work efforts."  See ECF No. 42-1, Ex. 3 thereto at § B(2)(c).  Relatedly, the VA did not have authority to fire or discipline Dr. Mensch; instead, any concerns regarding contract doctors were relayed to UM to address the issues.  See ECF No. 44 at ¶ 8.

Moreover, as agreed under the contract, UM, in fact, paid Dr. Mensch, withheld items from his paycheck, provided medical malpractice coverage for him, and invoiced the VA for services provided by Dr. Mensch and the other contract doctor.  See ECF No. 44 at ¶¶ 9-12.  That Dr. Mensch was an employee of UM is further evidenced by the fact that Plaintiff himself testified at deposition that Dr. Mensch was an employee of UM, see ECF No. 40-1 at pp. 46:23-25; 67:23-25, and that the informed consents signed by Plaintiff for the surgeries state "contract physician" next to Dr. Mensch's name, see ECF No. 44 at ¶¶ 16, 22.  Additionally, Dr. Mensch wore a white coat that said "University of Miami" when he practiced at the Miami VA.  See ECF No. 44 at ¶ 7.

To the extent Plaintiff argues that Dr. Mensch was an apparent agent of the United States, see ECF No. 1 at ¶ 19, the argument is without merit.  The doctrine of apparent agency does not constitute a basis to waive the United States' sovereign immunity under the FTCA.  Del Valle, 170 F.Supp.2d at 1267 n. 16 ("The plaintiffs also argue that the doctors are apparent agents of the United States.  This argument is without merit because the doctrine of apparent agency is not a

---

hospital professional personnel in the course of patient care activities."  Id.  No similar language is found in the contract between the VA and UM.

proper basis for a waiver of sovereign immunity under the FTCA"); <u>Spitzer v. United States</u>, 1988 WL 363944, at *6 (S.D. Ga. Feb. 16, 1988) (holding that "plaintiff may not advance the theory of apparent agency in this FTCA case").

Thus, based on the plain language of the contract as well as the parties' performance, Dr. Mensch was an employee of independent contractor UM during the time he provided medical care and treatment to the Plaintiff.  As such, the independent contractor exception to the Government's waiver of sovereign immunity applies and the Court lacks subject matter jurisdiction over this case.

## III.   PLAINTIFF CANNOT ESTABLISH MEDICAL MALPRACTICE.

In the alternative, the court should grant summary judgment because Plaintiff cannot establish the elements of his medical malpractice claim.  The Supreme Court has held that "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

Title 28 U.S.C. § 1346(b) provides for the liability of the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  In analyzing an FTCA claim, the court applies the law of the state where the alleged tort occurred.  <u>Stone v. United States</u>, 373 F.3d 1129, 1130 (11th Cir.2004).

To prevail in a medical malpractice action in Florida, a plaintiff must (1) establish the standard of care owed, (2) produce evidence that the defendant breached the applicable standard of care, and (3) demonstrate that said breach was the proximate cause of the alleged injury.

Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla. 1984); see also Turner ex. Rel.
Turner v. United States, 514 F.3d 1194, 1203 (11th Cir. 2008).   Under Florida law, expert
testimony is required to establish these elements.  See Lambert v. United States, 198 Fed. App'x
835, 838 (11th Cir. 2006) (finding that the medical negligence claim failed because plaintiff had
not submitted "any medical testimony or expert testimony to support his claims and there was no
evidence of causation"); Ponders v. United States, 2014 WL 2612315, at *3 (S.D. Fla. Jun. 11,
2014) (recognizing that the plaintiff "must produce medical or expert opinion testimony sufficient
to establish that the alleged negligence of the United States caused plaintiff's alleged injury").

Plaintiff's claim is that Dr. Mensch breached the standard of care during one of the 2013
left shoulder surgeries and that the breach caused injury to a nerve in his shoulder (the axillary
nerve).  Plaintiff has no expert testimony as to standard of care, breach, or causation.  In layman's
terms, no expert has identified what it is that Dr. Mensch did wrong during either surgery or how
anything Dr. Mensch did wrong caused an injury to Plaintiff.

Because Florida law requires expert testimony to establish standard of care, breach, and
causation in medical negligence cases, Plaintiff cannot establish the essential elements of his
medical negligence claim.

With respect to standard of care, Florida Statute § 766.102(1) provides:

> In any action for recovery of damages based on the . . . personal injury of any
> person in which it is alleged that such . . . injury resulted from the negligence of
> a health care provider . . ., the claimant shall have the burden of proving by the
> greater weight of evidence that the alleged actions of the health care provider
> represented a breach of the prevailing professional standard of care for that
> health care provider. The prevailing professional standard of care for a given
> health care provider shall be that level of care, skill, and treatment which, in light
> of all relevant surrounding circumstances, is recognized as acceptable and
> appropriate by reasonably prudent similar health care providers.

Fla. Stat. § 766.102(1).  Florida law also states that "[a] person may not give expert testimony concerning the prevailing professional standard of care unless the person is a health care provider who holds an active and valid license and conducts a complete review of the pertinent medical records" among other criteria.  See Fla. Stat. § 766.102(5).  Accordingly, the standard of care in medical malpractice cases under Florida law is determined through expert testimony.  See Lambert, 198 Fed. Appx. at 839 (affirming dismissal of a medical malpractice claim under the FTCA where plaintiff submitted only "his own conclusory allegations") (citing Pate v. Threlkel, 661 So. 2d 278, 281 (Fla. 1995)); Torres v. Sullivan, 903 So. 2d 1064, 1068 (Fla. 2d DCA 2005)).

Also, to establish proximate cause "the plaintiff must show that what was done or failed to be done probably would have affected the outcome."  Gooding, 445 So.2d at 1020.  "A mere possibility of . . . causation is not enough; and when the matter remains one of pure speculation or conjecture . . . it becomes the duty of the court to direct a verdict for the defendant."  Id. at 1018 (citation omitted).  That Plaintiff, as he alleges in his Complaint, was diagnosed with a partial axillary neuropathy over three (3) years after his surgeries at the VA does not establish that Dr. Mensch breached the standard of care or caused that injury.  It certainly does not meet Plaintiff's expert evidence burden on these elements.  The plain language of the Florida medical malpractice statute says that "[t]he existence of a medical injury does not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately caused by a breach of the prevailing standard of care by the health care provider").  See Fla. Stat. § 766.102(3)(b); see also Ponders, 2014 WL 2612315, at *3 (recognizing that the fact that the decedent suffered a cardiac arrhythmia that led to his death does not itself establish a cause of action) (citing Fla. Stat. § 766.102(3)(b)).

Plaintiff has no expert witness to testify to standard of care, breach, or causation with respect to Dr. Mensch's treatment of the Plaintiff.  By contrast, the United States' expert orthopedic surgeon Dr. Sinnreich examined Plaintiff, reviewed his medical records, and produced a report stating that Dr. Mensch's treatment of Plaintiff, including the surgeries, was appropriate and did not breach the standard of care.  See ECF No. 43-13 at p. 4.  Dr. Sinnreich stated that a reverse shoulder operation is not a standard total shoulder replacement and is performed in salvage situations.  Id.  Axillary nerve damage is a known complication of the procedure.  Id.  Dr. Mensch detailed in his informed consent and clinical notes that patients with this type of condition have a higher likelihood of nerve damage than with the average surgery.  Id.   Dr. Sinnreich also opined that given the Plaintiff's "distorted anatomy and muscle damage from his fracture and prior surgery [before the surgeries at the VA]" as well as an MRI and CT scan that pre-dated the surgeries at the VA, that there was some axillary nerve dysfunction prior to the Plaintiff's first surgery at the VA in February 2013.  Id.

Because Plaintiff has no expert witness to testify as to standard of care, breach, and causation, there is no one to refute Dr. Sinnreich's opinion or the testimony of Dr. Mensch on these issues.   The only expert medical evidence in this case establishes no medical malpractice, warranting summary judgment in the Government's favor.

To the extent Plaintiff argues that his "Notice of Expert Witness Disclosure" satisfies the expert testimony requirement, this argument should be rejected.  See ECF No. 43-14. The disclosure is plainly insufficient for the purpose of identifying expert testimony to establish medical malpractice in Florida because it does not state that any of the doctors disclosed will testify

concerning the standard of care or breach thereof.[3]  See id.  Further, Plaintiff has not produced any expert reports, as required for treating doctors to testify to opinion matters arising outside their treatment of the plaintiff.  See ECF No. 16.  Moreover, the doctors identified in Plaintiff's Notice that have testified at deposition (Drs. Locatelli, Pitcher, and Wodicka), have not opined on standard of care, breach, or causation in a manner that is favorable to the Plaintiff.

Thus, summary judgment should be granted in favor of the United States because Plaintiff cannot establish the elements of medical negligence.  See Lambert, 198 Fed. App'x at 838; see also Rushing v. United States, 288 Fed. App'x 616, 620 (11th Cir. 2008) (affirming grant of summary judgment in favor of the United States where plaintiff did not prove his medical malpractice claim through the use of expert testimony); Ponders, 2014 WL 2612315, at *4 (same); Kimball v. United States, 2005 WL 1320126, at *3 (M.D. Fla. Jun. 1, 2005) (granting the United States' motion for summary judgment on the plaintiff's FTCA medical malpractice claims where the plaintiff failed to provide an affidavit from a medical practitioner that established the standard of care in the community and that defendant breached that standard); Hairston v. Negron, 2013 WL 12089783, at **9-*10 (M.D. Fla. Jan. 8, 2013) (granting summary judgment in favor of the defendants where the plaintiff did not provide expert testimony that the defendants breached the standard of care and that plaintiff suffered damage to his health as a result of the breach); Luckett v. United States, 2009 WL 1856417, at *5 (E.D. Mich. June 29, 2009) ("Plaintiff has not submitted any medical opinion evidence to support his claim . . . . motion for summary judgment could be granted on this ground alone.").

---

[3]    The United States will file a contemporaneous Motion to Exclude the Opinions of Plaintiff's Expert Witnesses because the Notice was served after the June 25, 2018 deadline set forth in the Scheduling Order and does not comply with the Scheduling Order requirement for expert reports.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant summary judgment in its favor and against Plaintiff.

Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

By:     s/Alicia H. Welch
ALICIA H. WELCH
Assistant U.S. Attorney
Florida Bar No. 100431
Email: Alicia.Welch@usdoj.gov
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Tel: (305) 961-9370
Fax: (305) 530-7139

s/ Marlene Rodriguez
MARLENE RODRIGUEZ
Assistant U.S Attorney
Florida Bar No. 120057
Email: marlene.rodriguez@usdoj.gov
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Tel: (305) 961-9206
Fax: (305) 530-7139

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all counsel of record identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/Alicia H. Welch
Alicia H. Welch, AUSA

13

## <u>SERVICE LIST</u>

**Lee Friedland, Esq.**
FRIEDLAND & ASSOCIATES P.A.
*Attorneys for Plaintiff*
707 NE 3rd Avenue, Suite 201
Ft. Lauderdale, Florida  33304
Email: <u>lee@yourfightourbattle.com</u>
Tel: (954) 321-8810
Fax: (954) 321-8995

***Served via Notice of Electronic Filing generated
by CM/ECF***